* * * * * * * * * * *
The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Phillips and the briefs and arguments of the parties. The appealing party has shown good ground to reconsider the evidence. Accordingly, the Full Commission reverses the Opinion and Award of the Deputy Commissioner and enters the following Opinion and Award.
 * * * * * * * * * * *
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. All parties are properly before the Industrial Commission, and the Industrial Commission has jurisdiction over the parties and the subject matter of this action. *Page 2 
2. All parties have been correctly designated, and there is no question as to misjoinder or nonjoinder of parties.
3. On or about 13 March 2007, defendant-employer employed more than three employees, and the parties were bound by and subject to the provisions of the North Carolina Workers' Compensation Act, N.C. Gen. Stat. § 97.
4. On or about 13 March 2007, there existed between Catrina D. Jones and Action Staffing Group an employee/employer relationship.
5. On or about 13 March 2007, employer was self-insured with respect to workers' compensation coverage for its employees, with Gallagher Bassett Services as the third-party administrator.
6. On or about 13 March 2007, plaintiff was employed by employer at an average weekly wage of $300.00 per week.
7. Plaintiff last worked for defendant-employer on or about 10 June 2007.
8. Plaintiff has not received any temporary total, temporary partial, permanent partial, or permanent total disability benefits.
9. The parties' Pre-Trial Agreement was received into evidence as a stipulated exhibit.
10. Any and all medical records concerning plaintiff are authentic as they were maintained in the course of activity of physicians or institutions identified. A set of 33 pages of stipulated medical records and reports and Industrial Commission forms was submitted into evidence as Stipulated Exhibit 1.
11. The deposition of Dr. Bruce Wilhelmsen is admitted into the record.
 * * * * * * * * * * * *Page 3 
Based upon all of the competent evidence of record and reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the evidentiary hearing, plaintiff was 43 years old and was employed by defendant-employer, a temporary employment agency, who assigned her to a windshield wiper assembly facility. Plaintiff's duties required her to inspect five to six pallets of windshield wipers per day. Plaintiff testified that 35 boxes were on one pallet, and there were 25-30 wipers per box. In February 2007, plaintiff had worked at the facility for about a week when she began to feel a pain in her arm and hand.
2. Prior to her job with defendant-employer, plaintiff worked for some time with Black and Decker. Her previous job required her to drop screens in holes in a repetitive nature.
3. Plaintiff presented to Pitt County Memorial Hospital on 21 February 2007, two days after her symptoms began, with complaints of left arm pain, numbness, and tingling. The diagnosis was radicular syndrome of the arms. Dr. Jason Hack noted that plaintiff needed to alternate positions at work to avoid exacerbation of her overuse injury. Plaintiff was referred to East Carolina Neurology.
4. Defendant-employer accommodated plaintiff's light-duty restrictions and plaintiff did not miss work for reasons related to her arm and hand pain. Plaintiff performed the light-duty work without a problem. In June 2007, defendant-employer ran out of light duty work for plaintiff to perform. In accordance with their normal procedures, they told plaintiff to go home and call in to check for additional assignments. Plaintiff did not call back in to defendant-employer to obtain an assignment and defendant-employer had no light-duty work available had plaintiff called in for assignments. *Page 4 
5. Plaintiff presented to Physician's Prime Care Centre on 28 February 2007. Dr. Aaron Cotten noted that she had tingling in her left hand that radiated into her shoulder and neck. The impression was carpal tunnel syndrome. Plaintiff was released to return to limited work with a twenty-pound lifting restriction.
6. Plaintiff presented to Carolina Neurology and Electromyography on 13 March 2007. Electrodiagnostic testing was performed. The conclusion was bilateral median neuropathies at or distal to the carpal tunnels that were mild in degree. Dr. Kevin Good noted that the findings supported carpal tunnel syndrome. He indicated that there was no evidence of cervical radiculopathy, plexopathy, myopathy, polyneuropathy, or other mononeuropathy.
7. Dr. Bruce Wilhelmsen testified his initial impression of 20 March 2007 was that plaintiff had signs and symptoms of acute carpel tunnel. Due to the recent onset, Dr. Wilhelmsen recommended that plaintiff try a steroid taper, wear a splint, and refrain from repetitive duties. Dr. Wilhelmsen stated that plaintiff's employment was a significant contributing factor to her carpal tunnel symptoms; however, he did not clearly testify that plaintiff's employment placed her at an increased risk of contracting carpal tunnel syndrome.
8. On 12 April 2007, plaintiff returned for follow up. Dr. Wilhelmsen thought she was improved and would not require surgery even though plaintiff did not take the medication he prescribed. He recommended she continue to avoid repetitive motions. Dr. Wilhelmsen's notes from that visit indicated that "she could have had some underlying etiologies that could have contributed to an underlying tenosynovitis." On 31 May 2007, plaintiff again returned for follow up, stating her symptoms had reoccurred.
9. A letter was sent to Dr. Wilhelmsen on 25 June 2007 requesting that he offer an opinion as to whether plaintiff's carpal tunnel syndrome was compensable. He was informed *Page 5 
that plaintiff began complaining eight days after she started the job. The detailed job description was provided. Dr. Wilhelmsen responded to the request via a letter dated 29 June 2007. Dr. Wilhelmsen wrote that, in his clinical experience, in the absence of trauma, it was uncommon to have a patient with irreversible problems with carpal tunnel syndrome after eight days of work. He noted that while the work might have aggravated an underlying condition that was occult, the EMG and nerve conduction studies suggested that the changes were mild. He noted that this was an indicator of a good prognosis. Defendants denied further medical compensation at that time.
10. Plaintiff remained out of work from 10 June 2007, without further medical restrictions until 14 December 2007. At that time, Dr. David Wiseman wrote plaintiff a work note, but he did not write specific restrictions, and the undersigned finds that restrictions from Dr. Wilhelmsen applied during this time.
11. Plaintiff has not looked for employment since 14 December 2007.
12. Defendant denied plaintiff's claim via a Form 61 completed on 10 July 2007. The claim was denied based on Dr. Wilhelmsen's statement that plaintiff experienced an aggravation of an underlying condition rather than contracting an occupational disease as a result of her employment with defendant.
 * * * * * * * * * * *
Based upon the foregoing stipulations and findings of fact, the Full Commission reaches the following:
 CONCLUSIONS OF LAW
1. "Disability" within the meaning of the North Carolina Workers' Compensation Act is defined as "incapacity because of injury to earn the wages which the employee was receiving at the time of injury in the same or any other employment." N.C. Gen. Stat. § 97-2(9) *Page 6 
(2005). The employee bears the initial burden of proving disability.Johnson v. S. Tire Sales Serv., 358 N.C. 701, 599 S.E.2d 508 (2004). Plaintiff failed to meet her burden of proving total disability.Russell v. Lowes Prod. Distribution, 108 N.C. App. 762, 765,425 S.E.2d 454, 457 (1993).
2. Plaintiff failed to prove by competent evidence that she contracted carpal tunnel syndrome as an occupational disease. See Chambers v.Transit Management, 360 N.C. 609, 636 S.E.2d 553 (2006). Plaintiff did not meet her burden that the employment exposed her to an increased risk or was a significant factor in plaintiff's condition.
 * * * * * * * * * * *
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Plaintiff's claim for compensation pursuant to the North Carolina Workers' Compensation Act must be, and the same is hereby, DENIED.
2. Each side shall pay their own costs.
This the 6th day of January 2009.
 S/_______________
 BUCK LATTIMORE
 COMMISSIONER
CONCURRING:
 S/_______________ DIANNE C. SELLERS COMMISSIONER
 S/_______________ BERNADINE S. BALLANCE COMMISSIONER *Page 1